## SAMUEL J. RUSSELL *et al.*

*v.*

## ISAAC A. MINTEER.

1. INSTRUCTION—*must not assume facts.* It is error for the court, in an instruction, to assume that a certain state of facts exists, or to direct a finding upon facts to be found by the jury, of which there is no evidence tending to prove. Such an instruction is calculated to mislead.

2. CONTRACT—*by bid with commissioners of highways.* Where the building of two bridges is let by the commissioners of highways to the lowest responsible bidder, and they notify such bidder to meet them at a certain time and place to complete the contract, which the bidder neglects to do, the contract will not be consummated, and one of the commissioners, without proof of authority from the others, can not waive the execution of a written contract.

APPEAL from the Circuit Court of Bureau county; the Hon. EDWIN S. LELAND, Judge, presiding.

Mr. J. J. HERRON, and Mr. JOHN SCOTT, for the appellants.

Mr. GEO. W. STIPP, and Mr. J. B. RICE, for the appellee.

Mr. JUSTICE DICKEY delivered the opinion of the Court:

This was an action in the circuit court, by Minteer against Russell, Masters and Borden, as highway commissioners of the town of Leepertown, to recover damages for the alleged breach of an alleged contract to construct two certain bridges.

The declaration charges, that, as such commissioners, defendants advertised for bids to build two certain bridges, and that the advertisements declared the contract was to be let to the lowest and most responsible bidder, according to the specifications in the town clerk's office, and that said bridges were to be built in a reasonable time after such letting; that on Sept. 12, 1873, the bids were opened, and plaintiff was the lowest bidder, and that his bid was then accepted by defendants; that on the faith of such acceptance, plaintiff procured material for the work to the amount of $300, but defendants

forbade him from proceeding with the work, and for this supposed breach of that contract plaintiff was damaged $300. The general issue was pleaded. On the trial the suit was dismissed by plaintiff as to Borden. Verdict and judgment were rendered against Russell and Masters for $50. Russell and Masters appeal from this judgment.

The bill of exceptions, as the judge certifies, contains "the substance of the evidence, and is sufficiently accurate to preserve all questions except that of the verdict being against the *weight* of the evidence."

On the trial, no evidence whatever appears to have been given tending to show that the highway commissioners *advertised* for bids to build the bridges in question. No proof whatever appears, tending to show that any specifications were in the office of the town clerk, no proof whatever as to what such specifications contained, and no proof of the allegation that, by the terms of the alleged advertisement and specifications, the bridges were to be built in a reasonable time after the letting under the bids sought.

There is proof tending to show that bids for building two bridges were made, in writing, by plaintiff and others, and left with the town clerk, and that plaintiff's bid was for $238 on each bridge, and he was the lowest bidder, and that attached to his bid was the statement, "I will be here on Tuesday next." There is proof that the commissioners, on opening the bids Sept. 20, 1873, found and declared the bid of plaintiff the lowest, and that instead of arranging to meet him at the clerk's office on the next *Tuesday*, they left a note for him with the town clerk, signed by Russell and Masters, saying, "please meet us at the Bureau House *Wednesday*, Sept. 24, about four o'clock P. M., to complete your bid on bridges." There is also proof that plaintiff did not appear, either at the clerk's office on Tuesday or at the Bureau House on Wednesday, Sept. 24, 1873, and never after had any communication in the way of closing a contract with the commissioners, except an alleged interview with Russell, one of them, in Princeton. There is no proof tending to show that Russell was ever author-

ized by the highway commissioners to make any contract in their behalf with Minteer on this subject.

The court charged the jury, that they should find for the plaintiff if they shall believe, from the following facts—

" 1st. That about the month of September, 1873, the defendants, Samuel Russell and Miles Masters, as highway commissioners of Leepertown, advertised that they would, until the 20th day of said September, receive at the town clerk's office of said town proposals or bids for the job of building two bridges in said town, and that they would let the same to the lowest responsible bidder, and that said bridges should be built according to certain specifications and plans then in the town clerk's office of said town.

" 2d. That on or about the 19th of said September, the plaintiff left in the said town clerk's office, for said named defendants, his bid or proposal, in writing, by which he agreed or proposed to build the said bridges according to the said specifications, for the sum of $238 each, or $476 for the two.

" 3d. That on the said 20th day of September, the defendants, according to their said advertisement, opened and canvassed the proposals received for the job of building said two bridges, and found that the said proposal of the plaintiff was the lowest bid offered, and that plaintiff was thus responsible.

" 4th. That they, defendants, then declared that the plaintiff's said proposal was the lowest one offered, and that they would let the said job to him.

" 5th. That afterwards, and about the first of October, 1873, the defendant Russell met the plaintiff, and notified him, the plaintiff, that his said proposal was the lowest bid offered, and that the said job was let to him on his said proposal. And,

" 6th. That the plaintiff, on being so informed, acquiesced in the said action of the defendants in so letting said job to him.

" The above state of facts would constitute, in law, a valid and binding contract between the said parties, and it could make no difference that the same was not reduced to writing,

nor that no time was fixed in which the plaintiff would have the said bridges completed, unless it be so understood by the parties, that the contract was to be reduced to writing, and that, if so, this understanding was not waived, and a verbal one substituted for the written one.

"The jury are further instructed, that if they shall believe, from the evidence, that the several facts supposed in the foregoing instructions are true, and they shall further believe, from the evidence, that the plaintiff, relying upon the said contract, and in pursuance thereof, in a reasonable time thereafter, went on and procured the lumber and materials with which to execute the said contract on his part, and within such reasonable time was about to perform the said contract, when the defendants Russell and Masters forbade him to execute the said contract, and declined to have the said work done —on the above state of facts the jury should find for the plaintiff."

These instructions are palpably erroneous. The phraseology was calculated to lead the jury to infer that the court regarded the hypotheses stated to be statements of the real facts. The court speaks of these hypotheses in the preliminary sentence as "*the following facts*," and again we find the following phrase: "The above *state of facts* would constitute a valid binding contract."

It was erroneous, under the evidence, to submit to the jury to find whether the defendants advertised in the manner stated in the instructions, for the plain reason that there was not one word of proof on the subject of an advertisement, nor on the subject of specifications.

It was error to advise the jury that the supposed advertisement by the commissioners, the supposed bid by plaintiff, the decision of the commissioners that plaintiff's bid was the lowest, and that he was responsible in connection with the mere declaration by the commissioners that they would let the job to him, followed by a notice by Russell to plaintiff that the job was let to him upon his bid, and the acquiescence of plain-

tiff therein, made all the essential elements of a binding contract for the building of the bridges, etc., for the breach of which plaintiff might recover. Under the declaration, plaintiff could only recover by proving a joint contract by the three defendants, as commissioners. There is no pretence that a contract was created by anything that happened prior to what occurred about the first of October, 1873, when it is supposed, in the instruction, Russell met plaintiff and notified him that the job was let to him on his proposal, in which, as suggested, plaintiff acquiesced.

There is no proof in the record tending to show that Russell had any authority to act in this regard for or in behalf of the other commissioners. There being no contract up to that time, and it being apparent, from the letter of Sept. 20, 1873, left by the commissioners with the town clerk for plaintiff, that the commissioners expected something more to be done by the plaintiff " to complete his bid upon the bridges," it follows, that until the commissioners jointly did something further no contract was consummated.

There is evidence tending to prove that Russell was willing to waive the making of a written contract, but there is no evidence tending to show that any of the other commissioners did anything tending to waive a written contract, nor that Russell was authorized to make such waiver for the other commissioners.

The judgment must be reversed and the cause remanded.

*Judgment reversed.*